# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **MELISSA A RUSSELL,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 7:17-cv-01399-RDP |
| **SYNCHRONY FINANCIAL, et al.,** | } |
| **Defendants.** | } |

## **MEMORANDUM OPINION**

This case is before the court on Defendants' Motion to Dismiss Plaintiff's Complaint and Amended Complaint.[1] (Doc. # 14). Plaintiff Melissa A Russell ("Plaintiff") opposes the Motion. (Doc. # 19). For the reasons explained below, Defendants' Motion to Dismiss (Doc. # 14) is due to be granted in part.

### **I.    Relevant Background**[2]

Between November 2015 and March 2017, Plaintiff asserts that she applied for and was approved for six different Synchrony-branded credit card accounts for Credit Care, Lowe's, Wal-Mart, Belk, Chevron, and BP Gas. (Doc. # 1-1 at p. 4). Plaintiff's credit limit on her Chevron credit card and Lowe's credit card were lowered in August 2016 and September 2016. (*Id.*). Plaintiff claims that she was timely paying these accounts and that she never received an explanation as to why her credit limits were lowered. (*Id.*). Plaintiff alleges that she later

---

[1] Plaintiff has filed this action against Synchrony Bank ("Synchrony," misidentified as "Synchrony Financial"), Lowe's Home Centers, LLC ("Lowe's," misidentified as "Lowes Company,"), Wal-Mart Stores, Inc. ("Wal-Mart," misidentified as "Walmart Company"), and Belk, Inc. ("Belk," misidentified as "Belk Company") (collectively referred to as "Defendants"). (*See* Doc. # 1-1).

[2] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving the Motion to Dismiss (Doc. # 14), the court treats the facts alleged in the Complaint (Doc. # 1-1 at p. 4-8) and the First Amended Complaint (Doc. # 1-1 at p. 10-13) as true. The court also liberally construes these documents as they were filed *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

realized that her Lowe's credit card account had been closed "for no explained reason" and that Synchrony had attached "a false negative statement . . . to her credit file." (*Id.* at p. 4-5).

On September 13, 2016, Plaintiff called Synchrony, and Synchrony allegedly gave her "several different phone numbers to contact each of [Synchrony's] creditors to kindly ask that no reviews of [her] accounts be done to either increase or decrease the set credit balance." (*Id.* at p. 5). Plaintiff claims that she called each of these creditors and they agreed to these requests. (*Id.*). Nevertheless, she alleges that, on April 22, 2017, she was embarrassed at Belk because her Belk credit card had been closed without her having received notice. (*Id.*). On April 24, 2017, Plaintiff looked at her online Synchrony accounts and realized that Synchrony had closed two credit card accounts and lowered the credit limit on one of her other credit card accounts. (*Id.*). Plaintiff contends that, at this point, she also realized that Synchrony had negatively reported these events to a credit bureau. (*Id.*).

Plaintiff claims that as a result she "was very distraught and felt unworthy, worthless and depressed" and was prescribed medicine by a psychiatrist for anxiety and depression. (*Id.*). On April 30, 2017, Plaintiff received a letter of explanation regarding her Wal-Mart credit card account. (*Id.*). After writing to Synchrony and contacting some of its employees, Plaintiff received a letter from Synchrony stating that her requests for non-monetary action had been denied. (*Id.*).

On July 12, 2017, Plaintiff filed a complaint against Synchrony in the Circuit Court of Tuscaloosa County, Alabama. (Doc. # 1-1 at p. 2-8). The Complaint asserts claims of (1) negligence, (2) defamation of character, (3) discrimination, (4) privacy violation, and (5) emotional distress. (*Id.* at p. 4-8). Plaintiff's negligence, defamation of character, and emotional distress claims are all based on Synchrony's reporting of information to Credit Reporting

Agencies ("CRAs"). (*Id.* at p. 6-7). Plaintiff's discrimination claim appears to be based on the Equal Credit Opportunity Act, and her privacy violation claim centers on Synchrony "repeatedly pull[ing] information and records about the plaintiff without her express consent and without reason." (*Id.*).

Plaintiff amended her pleadings on July 17, 2017 and added Lowe's, Wal-Mart, and Belk as defendants. (*Id.* at p. 10-13). The First Amended Complaint seeks to hold these added defendants "Vicariously Liable (Respondeat Superior) and responsible for the malicious, negligent actions of its third party as its employee or independent contractor." (*Id.* at p. 10). On August 18, 2017, Defendants removed this action to federal court. (Doc. # 1). The court now has before it the pending Motion to Dismiss.

**II.    Standard of Review**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Additionally, courts must liberally construe documents filed *pro se*. *Erickson*, 551 U.S. at 94.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x. 136, 138 (11th Cir. 2011) (unpublished) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.  Analysis**

Defendants argue that Plaintiff's Complaint and First Amended Complaint are due to be dismissed because (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, preempts any claims arising under state law that are based on allegedly inaccurate or erroneous reporting of information and (2) Plaintiff has failed to state any claims on which relief can be

4

grated. (Doc. # 14). Plaintiff does not directly address the preemption issue but counters that her Complaint and First Amended Complaint sufficiently state claims against Defendants. (Doc. # 19). The court explores these different arguments, in turn.

### A. Plaintiff's Negligence and Emotional Distress Claims Are Preempted by the FCRA

Defendants claim that all of Plaintiff's claims are preempted by the FCRA because "the allegedly inaccurate reporting is the sole basis for all of Plaintiff's claims." (Doc. # 14 at p. 3-4). Although Plaintiff's negligence, defamation, and emotional distress claims are premised on Synchrony's reporting of information to CRAs, that cannot be said of Plaintiff's discrimination and privacy violation claims. (*See* Doc. # 1-1 at p. 6-7). Therefore, the court only addresses the potential preemption (based on Synchrony's status as a furnisher of information) of Plaintiff's negligence, defamation, and emotional distress claims.

As a provider of information to CRAs, Synchrony acts as a furnisher under the FCRA. The FCRA places two main duties on furnishers: (1) a duty to provide accurate information; and (2) a duty to investigate after receiving a notice of dispute. *See* 15 U.S.C. § 1681s-2. Section 1681s-2(a)(1) of the FCRA prohibits a furnisher of information from providing information to a CRA if it knows or has reasonable cause to believe that the information is inaccurate. *Id.* § 1681s-2(a)(1)(A). Section 1681s-2(a)(1) also prohibits a furnisher of information from reporting information after it has been informed by a consumer that the information is inaccurate (so long as the information is actually inaccurate). *Id.* § 1681s-2(a)(1)(B). Accordingly, the alleged conduct underlying Plaintiff's negligence, defamation, and emotional distress claims is regulated under § 1681s-2.

Two preemption provisions of the FCRA are relevant to Plaintiff's claims regarding Synchrony's actions as a furnisher: § 1681t(b)(1)(F) and § 1681h(e). Section 1681t, which

5

addresses the relationship between the FCRA and state laws, provides in relevant part that "[n]o requirement or prohibition may be imposed under the laws of any State [ ] with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Id.* § 1681t(b)(1)(F) (listing particular exceptions to the preemption provision that do not apply to the present case). Section 1681h(e), a limitation of liability contained in a FCRA subsection governing disclosures of information by consumer reporting agencies, provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to . . . any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, . . . except as to false information furnished with malice or willful intent to injure such consumer.

*Id.* § 1681h(e).

Judges of this court have taken different approaches when reconciling these two FCRA preemption provisions. *See, e.g.*, *Dial v. Midland Funding, LLC*, No. 2:14-cv-663-WMA, 2015 WL 751690, at *6-7 (N.D. Ala. Feb. 23, 2015) (identifying five approaches that have been used by judges of this court). In prior opinions, the undersigned has found that § 1681h(e) addresses the situation when the FCRA preempts state law defamation, invasion of privacy, and negligence claims against furnishers and that § 1681h(e) contains a specific exception to preemption, under which these claims may be brought against furnishers. *See Smith v. Prof'l Debt Mediation, Inc., et al.*, No. 2:16-cv-258-RDP, 2017 WL 1247507 (N.D. Ala. Apr. 4, 2017); *Jackson v. HSBC Mortgage Servs., Inc.*, No. 2:14-cv-1240-RDP, 2014 WL 5100089 (N.D. Ala. Oct. 10, 2014). In *Smith* and *Jackson*, the court concluded that a defamation, invasion of privacy, or negligence claim against a furnisher is not preempted by the FCRA if the information provided was false

6

and the furnisher acted with malicious or willful intent to damage the consumer. *See Smith*, 2017 WL 1247507, at * 5; *Jackson*, 2014 WL 5100089, at *5; *see also Lofton-Taylor v. Verizon Wireless*, 262 Fed. App'x 999, 1002 (11th Cir. 2008) (stating that 15 U.S.C. § 1681h(e) "means that where a company furnishes credit information about a consumer to a credit reporting agency pursuant to the Fair Credit Reporting Act, the company furnishing the information is protected from state law defamation and invasion of privacy claims unless the information it provided was both false and also given with the malicious or willful intent to damage the consumer"). However, as noted in *Smith*, a negligence claim cannot logically fall within the exception to § 1681h(e) preemption for conduct committed with malicious or willful intent because a negligent act cannot be committed with malicious or willful intent. *Smith*, 2017 WL 1247507, at * 5; *see Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1379-80 (N.D. Ga. 2004) ("[W]here there is a requirement of 'malice or willful intent to injure' there is no cause of action for negligence. Because negligence claims, by definition, are not premised upon Defendant's malice or willful intent to injure, negligence claims are preempted by § 1681h(e)."). Thus, Plaintiff's negligence claim is due to be dismissed because it is preempted by the FCRA. Because Plaintiff's emotional distress claim does not fit into the exceptions provided by § 1681h(e), it is also preempted by the FCRA and due to be dismissed.

Plaintiff's defamation claim alleges the following:

> Defendant has defamed the character of the plaintiff by providing false and misleading information to an entity that reports to others about the plaintiff[']s worthiness. The defendant use[s] their otherwise legitimate access to a computer system to engage in improper, negligent and malicious activities. Because of the defendant[']s malicious and defaming actions electronically otherwise, the defendant implicated the plaintiff[']s unworthiness thus causing other creditors to deny the Plaintiff and deem her unworthy. The defendant[']s malicious behavior injured the plaintiff[']s reputation.

7

(Doc. # 1-1 at p. 6). Although Plaintiff has not provided an indication of what false information was provided or how such alleged actions were malicious, given Plaintiff's *pro se* status, the court finds that Plaintiff's defamation claim is sufficient to withstand the FCRA's applicable preemption provision at this stage of the litigation.

### B. Plaintiff's Claims All Fail to State a Claim upon which Relief Can Be Granted

Regardless of preemption, all of Plaintiff's claims fail to state a claim upon which relief can be granted and are due to be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Each claim is explored below.

#### 1. Plaintiff's Negligence Claim Fails

"'To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.'" *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (citing *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by contract." *McClung v. MERS, Inc.*, No. 2:11-cv-03621-RDP, 2012 WL 1642209, at *7-8 (N.D. Ala. May 7, 2012) (quoting *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012)). "[A] negligent failure to perform a contract . . . is but a breach of the contract." *Id.* at *7 (quoting *Blake*, 845 F. Supp. 2d at 1210); *see also Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled in part on other grounds by White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009), ("[A] mere failure to perform a contractual obligation is not a tort.").

Plaintiff alleges that Synchrony "failed to perform the duties according to the credit agreement pertaining to the six credit accounts . . . ." (Doc. # 1-1 at p. 6). Plaintiff does not describe what duties Defendants allegedly owed her. (*See id.*). However, even if she did, this

8

negligence claim fails as a matter of law because it is based on it is "a tort-like cause of action for the breach of a duty created by contract" and Alabama law does not recognize such a claim. *McClung*, 2012 WL 1642209, at *7-8. Therefore, to the extent that Plaintiff's negligence claim is not preempted by the FCRA, it is due to be dismissed because it fails to state a claim as a matter of law.

### 2. Plaintiff's Defamation Claim Fails

To prove a communication was defamatory, a plaintiff must present evidence establishing the following elements: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989) (citing Restatement (2d) of Torts § 558 (1977)). Importantly, "[t]ruth is an absolute defense" to a defamation claim. *Foley v. State Farm Fire and Cas. Ins. Co.*, 491 So. 2d 934, 937 (Ala. 1986) (citation omitted). Whether the statements at issue in a defamation case are reasonably capable of a defamatory meaning is a question of law. *Harris v. Sch. Annual Publ'g Co.*, 466 So. 2d 963, 964 (Ala. 1985).

Here, Plaintiff has failed to specify which allegedly defamatory statements were made. (*See* Doc. # 1-1 at p. 6). Instead, Plaintiff makes a conclusory statement that "Defendant has defamed the character of the plaintiff by providing false and misleading information to an entity that reports to others about the plaintiff[']s worthiness." (*Id.*). Such a "naked assertion" without supporting factual allegations does not meet Rule 8 standards and is due to be dismissed. *Twombly*, 550 U.S. at 555, 557.

### 3. Plaintiff's Discrimination Claim Fails

The Equal Credit Opportunity Act ("ECOA") prohibits a creditor from discriminating "against any applicant, with respect to any aspect of a credit transaction [] (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a). "To be liable under the ECOA, a creditor must take an 'adverse action' against the plaintiff." *Molina v. Aurora Loan Servs.*, LLC, 635 F. App'x 618, 624 (11th Cir. 2015) (citing 15 U.S.C. § 1691(d)). The ECOA defines an "adverse action" as the following:

> the term 'adverse action' means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d). Notably, "[t]he ECOA is not a general, catch-all, prophylactic remedy allowing any disgruntled debtor to sue a creditor for any slight, real or imagined; rather, the conduct it proscribes is the discriminatory administration of a credit transaction." *Nicholson v. Johanns*, No. CIV.A. 06-0635-WSB, 2007 WL 3407045, at *5 (S.D. Ala. Nov. 13, 2007), *aff'd sub nom. Nicholson v. U.S. Dep't of Agric.*, 275 F. App'x 878 (11th Cir. 2008).

Plaintiff appears to contend that Defendants discriminated against her (1) as a member of a protected class and (2) because she exercised her rights under the Consumer Credit Protection Act. (*See* Doc. # 1-1 at p. 6-7). First, Plaintiff alleges that "[t]he defendant has acted in a discriminatory manner in the way they have dealt with the plaintiff and her credit" and that her

"Care Credit account issued by Synchrony Financial has the highest APR and it lists the applicant[']s race, sex, nationality, etc." (*Id.* at p. 6). Second, Plaintiff states that she was discriminated against "because she openly voiced her disagreement with the defendant" and "[t]he defendant targeted her accounts ever[] since that first contact." (*Id.* at p. 6-7). Both of these claims fail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To state a claim under 15 U.S.C. § 1691(a)(1), Plaintiff must plead specific facts that support a showing that she is a member of a protected class and that others of similar credit stature were given more favorable treatment than Plaintiff. *See Ahmed v. Chase Home Fin., LLC*, No. 1:10-CV-3700-AT, 2011 WL 13217821, at *2 (N.D. Ga. June 20, 2011); *Kachur v. Bank of Am. Corp.*, No. 3:09-CV-1106-J-32-MCR, 2010 WL 3632703, at *2 (M.D. Fla. Sept. 14, 2010). Here, Plaintiff has not even identified what protected class was the basis for Defendants' alleged discrimination, and she certainly has not alleged that others of similar credit stature received more favorable treatment than she did. (*See* Doc. # 1-1 at p. 6-7). Accordingly, Plaintiff does not allege sufficient facts to allow the trier of fact to "'draw the reasonable inference'" that the closures and the credit decreases of some of her credit card accounts occurred "because of her membership in a protected class," and this § 1691(a)(1) claim is due to be dismissed. *Molina v. Aurora Loan Servs., LLC*, 710 F. App'x 837, 840-41 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

"In order to establish a violation of § 1691(a)(3), a plaintiff must show that: (1) he exercised in good faith (2) a right under the Consumer Credit Protection Act, and (3) as a result, the creditor discriminated against him with respect to the credit transaction." *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1335 (11th Cir. 2000). "[T]o establish the

discrimination element of a § 1691(a)(3) claim, it may be necessary for the plaintiff to show either that the creditor refused to extend credit to the applicant or that it extended credit but on less favorable terms." *Id.* at 1336. Because Plaintiff does not explain what right she exercised under the Consumer Credit Protection Act and does not provide any support for the discrimination element of her § 1691(a)(3) claim, this claim is also due to be dismissed. *See Prince v. U.S. Bank Nat. Ass'n*, No. CIV.A.0800574-KDN, 2009 WL 2998141, at *9 (S.D. Ala. Sept. 14, 2009) (holding that an ECOA claim based on § 1691(a)(3) was due to be dismissed, "particularly absent any allegation that the plaintiffs were treated differently than any other debtor similarly situated").

### 4. Plaintiff's Privacy Violation Claim Fails

The claim for invasion of privacy in Alabama is defined as the "intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *S.B. v. Saint James Sch.*, 959 So. 2d 72, 90 (Ala. 2006) (citations and internal quotations omitted). The tort includes "four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Id.* (citations omitted). Each of these four categories has distinct elements and constitutes a separate privacy interest that may be invaded.[3] *Id.*

Plaintiff alleges that Synchrony "repeatedly pulled information and records about the plaintiff without her expressed consent and without reason" and that she "had expressly opted

---

[3] Because Plaintiff has not identified which of these privacy interests Defendants have allegedly violated, the court will not list the elements for each category of invasion of privacy claims.

12

out of this option as long as the accounts were in good standing." (Doc. # 1-1 at p. 7). In order to state an invasion of privacy claim, Plaintiff must more clearly state what "information and records" Defendants allegedly accessed that invaded her privacy and, more broadly, what type of invasion of privacy claim she wishes to pursue.[4] *Cf. Twombly*, 550 U.S. at 555. Furthermore, to the extent Plaintiff is alleging that Synchrony -- as a user of information -- took an adverse action against her based on her credit reports, this state law claim is preempted by the FCRA. *See* 15 U.S.C. § 1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any user of information . . . based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer."). Because Plaintiff has not provided the court with a statement of her privacy claim showing that she is entitled to relief, this claim is due to be dismissed. *See* Fed. R. Civ. P. 8(a)(2).

### 5. Plaintiff's Emotional Distress Claim Fails

The elements of the tort of intentional infliction of emotional distress, also called the tort of outrage, are that (1) "the defendant's conduct was intentional or reckless," (2) the conduct "was extreme and outrageous," and (3) the conduct "caused emotional distress so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997). The Alabama Supreme Court in *Potts v. Hayes*, 771 So. 2d 462 (Ala. 2000), stated that it has recognized the tort of outrage "in regard to only three kinds of conduct:

---

[4] If Plaintiff is referring to credit "information and records," the court notes that the FRCA authorizes the use of credit information "in connection with a credit transaction . . . involving the extension of credit to, or review or collection of an account of, the consumer" and "to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(A), (F)(ii).

13

(1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Id.* at 465 (internal citations omitted). These three kinds of categories are not necessarily the only sufficient type of conduct that could plausibly plead intentional infliction of emotional distress.[5] *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011). Nevertheless, the guiding inquiry is ultimately whether a plaintiff has alleged facts "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). Whether a claim presents the requisite level of outrageousness to sustain a claim for intentional infliction of emotional distress is a question of law. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1258 (11th Cir. 2016).

Here, Plaintiff has failed to plead the elements necessary to establish an outrage claim as the conduct on which she premises her claim does not rise to the level of "extreme and outrageous" or conduct "so severe that no reasonable person could be expected to endure it." *Ex parte Crawford & Co.*, 693 So. 2d at 460. Synchrony's alleged actions of "knowingly, negligently and purposefully discriminat[ing] against and falsely report[ing] negative information about the plaintiff to a public institution" are not analogous to the three categories of conduct deemed outrageous in *Potts*, 771 So. 2d at 465. (Doc. # 1-1 at p. 7). Nor is this alleged conduct analogous to the sexual misconduct and professional misconduct deemed outrageous in *O'Rear*. *See O'Rear*, 69 So. 3d at 118-19. Accordingly, Plaintiff's emotional distress claim is

---

[5] In *O'Rear v. B.H.*, 69 So. 3d 106 (Ala. 2011), *abrogated in part on other grounds by Ex parte Vanderwall*, 201 So. 3d 525 (Ala. 2015), the Alabama Supreme Court "affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction." *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011).

due to be dismissed not only because it is preempted by the FCRA but also because Plaintiff has not sufficiently alleged outrageous conduct to support an outrage claim under Alabama law.

> **C. Plaintiff's First Amended Complaint Fails to State a Claim upon which Relief Can Be Granted**

In Plaintiff's First Amended Complaint, she adds Lowe's, Wal-Mart, and Belk as defendants. (Doc. # 1-1 at p. 10-11). Plaintiff states that these added defendants are vicariously liable under a theory of respondeat superior for Synchrony's malicious and negligent actions and that they "had the right, ability, or duty to control the activities" of Synchrony. (*Id.* at p. 10). Plaintiff further alleges that these added defendants were aware of the torts Synchrony was committing but "failed to ensure that the plaintiff and others were no longer injured by the negligence of Synchrony." (*Id.*). Plaintiff does not provide any factual support for these conclusory statements. (*See id.* at p. 10-11). Additionally, Plaintiff does not allege that Lowe's, Wal-Mart, or Belk engaged in any independent conduct for which they are liable to her. (*See id.*).

"Whether an agent/principal relationship exists depends upon whether there is evidence of a retained right of control, whether the control is exercised or not." *McLemore v. Ford Motor Co.*, 628 So. 2d 548, 551 (Ala. 1993). "Under a theory of respondeat superior, a principal can be held liable for a tort committed by his agent only if the agent commits the tort while working within the line and scope of his employment." *Ex parte Wild Wild W. Soc. Club, Inc.*, 806 So. 2d 1235, 1241 (Ala. 2001). "[I]t is a 'well-settled rule that a principal is not ordinarily liable for the torts of its independent contractor.'" *Id.* (quoting *Joseph Land & Co. v. Gresham*, 603 So. 2d 923, 926 (Ala. 1992)). Thus, in order for Plaintiff to recover against Lowe's, Wal-Mart, or Belk under a respondeat superior or vicarious liability agency theory, "it is necessary for the plaintiff to establish the status of employer and employee—master and servant—and to establish that the

act was done within the scope of the employee's employment." *Chamlee v. Johnson-Rast & Hayes*, 579 So. 2d 580, 582 (Ala. 1990); *see also Hudson v. Muller*, 653 So. 2d 942, 944 (Ala. 1995) ("To recover against a defendant under a theory of respondeat superior, the plaintiff must establish a status of employer and employee.").

As an initial matter, there can be no liability if the "agent" did not commit the underlying tort, and, as discussed above, all of Plaintiff's claims are due to be dismissed. *Cf. Owens v. Lucas*, 604 So. 2d 389, 391 (Ala. 1992). However, even if Plaintiff had pled viable claims (and, to be clear, she has not), she has not pled any facts to illustrate that Lowe's, Wal-Mart, or Belk had a right to control Synchrony or that an employer-employee status existed between these added defendants and Synchrony. (*See* Doc. # 1-1 at p. 10-11). Accordingly, Lowe's, Wal-Mart, and Belk are due to be dismissed as defendants in this action under Plaintiff's theory of vicarious liability.

## IV.  Conclusion

After careful review, the court concludes that Defendants' Motion to Dismiss (Doc. # 14) is due to be granted in part. Because Plaintiff's negligence claim (Count 1) and emotional distress claim (Count 5) are incurable as they are preempted by the FCRA, these claims are due to be dismissed with prejudice. Plaintiff's defamation claim (Count 2), discrimination claim (Count 3), and privacy violation claim (Count 4) are due to be dismissed without prejudice. As Plaintiff is proceeding *pro se*, the court will allow her the opportunity to replead her defamation, discrimination, and privacy claims with more particularity. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 3, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE